## GUERINGER v. M. KAPLAN & SON.
### No. 4889.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 5, 1934.

Frank B. Cappel and T. A. Carter, both of Alexandria, for appellant.

Abe N. Stracks, of Monroe, for appellee.

MILLS, Judge.

In this case, tried in the city court of Monroe, there was judgment rejecting plaintiff's demand and in favor of defendant as prayed for on its reconventional demand; from which judgment plaintiff has appealed to this court.

The facts, as disclosed by the record, are as follows: Plaintiff, a dealer in scrap metals at Alexandria, in Rapides parish, La., on August 2, 1933, entered into the following contract with defendant, a partnership domiciled at Monroe, in Ouachita parish:

"State of Louisiana: Parish of Ouachita:

"This the 2nd day of August in the year 1933, Mr. J. O. Gueringer sells and by these presents sells, bargains and conveys to M. Kaplan & Son, and M. Kaplan & Son buy the following materials at the prices as herein specified:

"35,000 pounds battery lead, to be dry, free from separators and excessive moisture at the price of two (2¢) cents per pound FOB Alexandria, La., car to be loaded within ten days.

"One car load of miscellaneous metals consisting of the following:
"Approximately:

| | | |
|---|---|---|
| 4,000 lbs. sheet aluminum | 11¢ | pound |
| 13,000 lbs. zinc | 2½¢ | pound |
| 3,000 lbs. heavy copper | 5½¢ | pound |
| 1,000 lbs. light copper | 4¾¢ | |
| 3,000 lbs. mixed red & yellow | 4.10¢ | |
| 5,000 lbs. radiators | 4¢ | |
| 1,500 lbs. cast aluminum | 7½¢ | |
| 500 lbs. linite pistons | 8½¢ | |
| 1,500 lbs. mixed lead | 2¾¢ | |
| 100 lbs. high speed babbit | 15½¢ | |

"Shipment on the mixed metals to be made within two weeks.

"All materials purchased subject to mill grading for final settlement.

"Upon receipt of railroad weights, on the battery lead, M. Kaplan & Son will honor a draft for 75% of the selling price above stated, the balance to be paid upon receipt of mill returns.

"On the mixed metals, returns are to be made by our man upon inspection and acceptance giving seller draft for eighty per cent, balance upon returns from mill.

"This agreement entered into this day first above written, as witnesseth by the appended signatures.

"J. O. Gueringer
"Seller.

"Accepted by:
"M. Kaplan & Son
"Purchaser
"By D. Kaplan."

The controversy arises over the car of mixed metals; there being no dispute as to the other shipments. The contents of this car were weighed in the presence of a representative of defendant before shipment, all foreign materials coming under his observation being thrown out before the weighing, but, the scrap being in sacks which were not emptied, no thorough grading was attempted. The weights determined at this time are admitted to have been correct. The 80 per cent. of the agreed price was duly paid.

It will be noted that the contract provides: "All materials purchased subject to mill grading for final settlement"; and that the 20 per cent. balance of the purchase price is to be paid subject to and upon receipt of returns from the mill to which the shipment was consigned. The return from the mill on this car was offered in evidence by defendant and objected to by plaintiff on the ground that it was not sufficiently identified. Though perhaps susceptible to successful objection on other grounds, we are satisfied that the identification of the return is sufficient, as a member of defendant firm testifies positively that it was duly received from the mill, and the contents itself shows clearly that it covers the car in question. This return indicates no discrepancy as to the gross weight, but does show deductions on practically each item making up the shipment because of the presence of foreign substances and lower grades of metal, which clearly comes under the head of grading, as specified in the contract. The defendant having sent the plaintiff its draft covering the correct amount due after these grading deductions, and same having been cashed by plaintiff, we are forced to conclude that the judgment of the lower court rejecting plaintiff's demand is correct.

Defendant pleaded in reconvention that Gueringer was indebted unto it in the sum of $300; that plaintiff agreed, in a contract entered into prior to that sued upon in the main

demand, to sell it 500 tons of scrap iron, but shipped only 200 tons, forcing defendant to purchase on the open market the deficiency of 300 tons at a price of $1 per ton greater than that provided in the contract. This contract is in writing, and reads:

"Alexandria, July 1, 1933.

"J. O. Gueringer agrees to sell and M. Kaplan & Son agrees to buy 500 tons tonnage accumulation, at the price of $3.00 per gross ton FOB cars Alexandria.

"It is agreed between the parties that railroad weights are to govern settlement, payment to be made from the office of M. Kaplan & Son, upon receipt of railroad documents.

"Unless otherwise herein endorsed in writing, the following specifications are to govern in the loading and shipping of steel scrap by seller to purchaser:

"Scrap steel to consist of pieces, not over 58" long, 18" wide, free of light materials such as sheet iron, bands or wire, and be clean of foreign substances not iron or steel, such as wood, cement or other foreign substances, and no cast iron can be included in steel specifications.

"This agreement entered into this day and date first above written, as witnesseth by the signatures hereunto appended.

"J. O. Gueringer
"Seller.

"Accepted by:
"M. Kaplan & Son
"By H. C. Outman."

It provides for the method of payment, but is silent as to the time of shipment. Plaintiff in reconvention claims that the shipments were to be made upon its instructions. Defendant in reconvention testifies, on the contrary, that it was agreed that the shipments should be made at once and continued without delay. Some 200 tons were promptly shipped and paid for, but, owing to the failure to obtain barges for its transportation to Memphis, instructions as to the shipment of the remainder were not given until about the middle of September. Telephone instructions not being obeyed, M. Kaplan, accompanied by his bookkeeper, H. C. Outman, went to Alexandria to see about the matter. Upon their arrival, they requested an immediate shipment of the balance of their purchase, which Gueringer refused to make unless he was paid the contested balance due on the car of metal in dispute in the main demand, or paid cash for the balance to be shipped under the contract involved in the reconventional demand. It was explained to Gueringer that barges were then available to receive this shipment, which, if not made immediately, would force Kaplan to purchase scrap iron on the open market to fulfill the committments of his firm, and that Gueringer would be held for any additional sums they were forced to pay over and above the contract price. Kaplan offered $50 in settlement of the dispute as to the main demand, and offered his draft, to be guaranteed by the bank, in payment for the remainder of the purchase under the contract involved in the reconventional demand, which was refused by Gueringer; whereupon Kaplan & Son purchased scrap iron elsewhere at a price of $1 per ton in advance of that specified in the contract.

We think that the lower court was correct in holding that Gueringer was not justified in refusing to comply with his obligations under the disconnected and entirely different contract involved in the reconventional demand because of a dispute as to some other contract; and was also unjustified in requiring a payment under the contract reconvened upon, contrary to its terms. We therefore conclude that the judgment in favor of defendant on his reconventional demand is also correct.

For the reasons above assigned, the judgment appealed from is affirmed.